David E. BRUTON et al., Plaintiffs,

v.

C. C. SCHNIPKE et al., Defendants.

Civ. A. No. 74–70467.

United States District Court,
E. D. Michigan, S. D.

Sept. 15, 1975.

Joel M. Shere, Detroit, Mich., for plaintiffs.

Vincent Terlep, Jr., Dept. of Justice, Washington D. C., for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, District Judge.

Defendants have moved to dismiss this action pursuant to Rule 12(b)(6) F.R.Civ.P. on the ground that plaintiffs have failed to state a claim upon which relief can be granted. Alternately, they moved for summary judgment pursuant to Rule 56 on the grounds that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

The motion for summary judgment is based upon the affidavits filed by both parties in connection with plaintiffs' motion for preliminary injunction, the testimony and exhibits received during the hearing on the motion, further affidavits and testimony taken on July 2, 1975. Although ordinarily the Court would require affidavits or depositions or interrogatories, this procedure was followed in this case with the consent of counsel because of the difficulty in getting the information in those traditional ways because of changes in counsel, personnel and information regarding the operation of Air National ' Guard.

■ The Court has also considered the legislative history of the pertinent statute referred to in various briefs of the parties. Many of the facts surrounding this controversy are set forth in considerable detail in the Court's Opinion denying plaintiffs' motion for preliminary injunction. *Bruton v. Schnipke*, 370 F.Supp. 1157 (E.D.Mich. 1974). Briefly, plaintiffs are Air Force National Guard technicians who attacked the constitutionality of Air National Regulation ANGR (40–01, Secs. 2 through 5), promulgated by the Secretary of the Air Force pursuant to the National Guard Technician Act of 1968 (Pub.L. 90–486), Sec. 2(1), 32 U.S.C., Sec. 709, ANGR 40–01, Secs. 2 through 5, promulgated by the Secretary of the Air Force on January 1, 1969, provides in part as follows:

Wearing of the Uniform. Technicians in the excepted service will wear the military uniforms appropriate to their service and federally recognized grade when performing technician duties. When the uniform is deemed inappropriate for specific positions and functions, adjutant general may authorize other appropriate attire. If the adjutant general exercises this preroga-

tive, this does not entitle technicians to payment of a uniform allowance authorized for Department of Defense civilian personnel.

The reasons given by Major General Francis Greenlief, the Chief of the National Guard Bureau, for the promulgation of this regulation, the history of its implementation and enforcement and the history itself, are set forth, at length, in the Court's earlier Opinion and will not be repeated here. It is undisputed that the regulation was adopted and promulgated in a procedurally proper manner and plaintiffs make no challenge in that regard.

The testimony, exhibits and affidavits disclose the regulation was promulgated for a military reason and had a military purpose even though there was evidence offered by plaintiffs that the effect of the regulation might, in fact, be deleterious to the military purpose or objective intended.

Plaintiffs' response to the instant motion is that plaintiffs have available additional evidence as to why the Air National Guard should not have, from the military standpoint, adopted the regulation. Indeed, this is the only issue of material fact which plaintiffs assert prevents summary disposal of this action. Although an issue of fact exists as to whether the military decision was a correct decision, this issue of fact is not material to the disposition of this action. The critical issue is whether, in view of the quasi-military, quasi-civilian status of the plaintiffs, their activities during the work week are a proper subject of military decision and control. If they are, then the Court cannot review the correctness of the military decision.

Plaintiffs argue that unless they are permitted to show why the regulation should not have been adopted, the military could adopt any regulation it desired and claim it was adopted for military reasons regardless of whether this was the case.

However, the Court is not here dealing with a regulation of that nature.

The requirement of the uniform and grooming standards for military personnel have a long historical existence. As the United States Supreme Court stated in *Gilligan v. Morgan,* 413 U.S. 1, 93 S. Ct. 2440, 37 L.Ed.2d 407 (1973):

> Trained professionals, subject to the day-to-day control of the responsible civilian authorities, necessarily must make comparative judgments on the merits as to evolving methods of training, equipping, and controlling military forces with respect to their duties under the Constitution. It would be inappropriate for a district judge to undertake this responsibility in the unlikely event that he possessed requisite technical competence to do so.

There is no genuine issue of material fact regarding the status of plaintiffs. They are members of the Air National Guard and are Air National Guard technicians. The Constitution itself vests in Congress the power:

> To provide for organizing, arming and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline *prescribed* by Congress. (Emphasis added). Art. I, Sec. 8.

Section 709 of Title 32, United States Code, authorizes the employment of National Guard technicians. That statute provides in part:

> (a) Under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, and subject to subsection (b) of this section persons may be employed as technicians in
> —
> (1) the administration and training of the National Guard; and
> (2) the maintanance and repair of supplies issued to the National Guard or the armed forces.

(b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

\* \* \* \* \* \*

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required under subsection (b) to be a member of the National Guard.

(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned; . . . .

Prior to the adoption of the above statute, Air National Guard technicians had been employees of their respective States although the Federal Government provided, to the States, the money to employ them. The technicians, during the regular work week, are primarily engaged in maintaining and securing the equipment and supplies needed by the National Guard units. They participate, actively, in the weekend drill sessions and summer camps, et cetera, just as any other National Guardsman.

With respect to the purpose and function of the National Guard, the testimony of Major General Francis Greenlief is undisputed. The National Guard is part of the "total forces concept" under which the Department of Defense or the Joint Chiefs of Staff, undertake to consider the number of military personnel needed for our national defense and military commitments. He testified that the Air National Guard is considered as supplying 35 percent of the tactical Air Force requirements. Nor is there any dispute that the National Guard is a military organization and its functions are largely military. Although plaintiffs work as technicians is not identical to work they do on weekend drill sessions or would do if the unit were activated (most of the technicians are sergeants and their work would be more supervisory when the unit is activated or at full complement), the work they do during the regular work week is usually closely related to their other military duty.

Employment and advances in technician status requires equivalent military rank or eligibility. The technicians are needed to maintain National Guard units in combat readiness. In view of the military aspects of the technicians' jobs, the statutory requirement that they be active members of the National Guard [1] and the fact that their work is under the control of the military, the regulation bears a rational relation to the National Guard purpose.

In its earlier Opinion in this case, the Court summarized General Greenlief's testimony as to the purpose of the regulation:

. . . . Summarized, General Greenlief testified that the technician

---

1. The Constitutionality of this requirement was upheld by the District Court for the District of Columbia in Local 371, *National*

*Army & Air Technicians Assoc. v. Major General Samuel F. Brink, et al* # 2688-70 (June 22, 1972).

force is an essential component of the military (there being no non-military purpose for the existence of the technician force), and that the wearing of the uniforms caused the technician force to be perceived as part of the military by both the civilian community and the military community. He further testified that uniforms are necessary and desirable because they 1) evidence membership in a military unit; 2) are specifically designed for military work in various climates; 3) save the airforce and the individual money since they are issued by the Government free of charge to the individual in lieu of a clothing allowance; and 4) contribute to a good inspection rating of the technician unit.

Major Greenlief further testified that the National Guard is part of the "total forces concept" which undertakes to consider the number of military personnel needed for our national defense and military commitments; he emphasized the increased reliance on the Air National Guard to supply 35 percent of the tactical air force requirements. Because it is a part of the "total forces" and must be relied upon by the balance of military services, it is important, he stated, that these other military services have confidence in it. (At pages 8 and 9).

Those reasons are a rational basis for the regulation's adoption.

Plaintiffs point out that the status of technicians is different from the other military personnel in that technicians enjoy collective bargaining rights, have a 40-hour work week, receive compensatory time for overtime, are not subject to the Uniform Code of Military Justice, do not receive BX (Base Exchange) privileges, are paid in accordance with Civil Service Wage scale, do not receive military medical and hospitalization benefits and can quit.

However, the fact that in all of these ways they are treated differently than regular military personnel, either because of statute or regulation, does not change their miliary nexus or function.

At the hearings held on July 2, 1975, plaintiffs offered evidence that employees of contractors had in the past, although in smaller numbers, done the same work as Air National Guard Technicians at various bases in the United States. The work done by these contract field teams varied from base to base. The testimony established that they were employed principally to carry out modifications in aircraft but did general shop work as well and might even work on the same engine as an air guard technician.

Lt. Col. Daren Spessert, Chief of Aircraft Maintenance, Air National Guard, testified that there are approximately 22,550 air guard technicians, only about 85% of the number needed to do the work. For this reason, contract employees are used to assist during conversion of aircraft from one type aircraft to another, assist in the modification of air frames or engines and provide relief and assistance during peak work loads which may be generated by inspections or Time Compliance Technical Order.

Norman Cohen, Administrative Contract Officer and Chief of the Contract Field Team Division, testified that the number of persons employed in these contract field teams has never exceeded 1000 although it may have exceeded 750 and that concurrently the number varies from 100 to 150. The contractor makes employees available on request of his office and these contract employees may be sent to any base which needs them. A particular employee may work at a particular base for a few years or for a very short time, depending upon how long the work lasts.

This additional evidence that persons not in military uniform [2] perform appar-

---

2. These contract employees wore work uniforms supplied by their employers.

ently satisfactorily the same work performed by guard technicians is in the same category as that of the earlier technician witness who testified that work was performed satisfactorily during the time Michigan Air National Guard technicians were not required to wear the uniform. Viewing it in the light most favorable to the plaintiffs, it tends to show that the uniform requirement is unnecessary. It does not demonstrate, however, that there is not a sufficiently rational basis for the regulation. Nor does the fact that some work is done by other than technicians change the military nature of the work.

Accepting all of the evidence offered by the plaintiffs in the light most favorable to them, including the affidavits and exhibits, it appears that the challenged regulation was adopted after consideration; that it is not arbitrary or capricious and that it has a rational basis.

■ Where the decision is a proper subject of military determination, the Court cannot review the correctness of that military decision.

For the foregoing reasons, the motion of the defendants for summary judgment is granted.

It is so ordered.