**George J. KLOTZBACH, Plaintiff,**

v.

**Howard H. CALLAWAY, Major General LaVern E. Weber, Major General John C. Baker, Charles J. McClure, Joseph N. Apicella, Herman J. Kuhn, Charles S. Schumacker, Joseph L. Ferreira and Howard P. Nadeau, Defendants.**

No. Civ-74-366.

United States District Court,
W. D. New York.

Aug. 10, 1979.

Victor Alan Oliveri, Buffalo, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Theodore J. Burns and Jack S. Penca, Asst. U. S. Attys., Buffalo, N. Y., of counsel), for defendants.

CURTIN, District Judge.

This is an action attacking the constitutionality of a National Guard regulation requiring technicians to wear a military uniform and conform to grooming requirements. The case was tried by the court sitting without a jury based on stipulated facts and trial record. What follows is the court's findings of fact and conclusions of law made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Briefly stated, the plaintiff was terminated from his position as a National Guard technician after he refused to comply with military grooming standards contained in Pamphlet 690–1, "Standards of Appearance for Male Technicians." This directive was promulgated by the defendant Major General John C. Baker, in his capacity as administrator of technician employees in New York State.

Plaintiff's original complaint was filed on July 30, 1974. On October 21, 1974, plaintiff moved for preliminary relief to reinstate him as a technician pending a decision in this case on the merits. This request was denied on November 26, 1974. Depositions were then taken of defendants Major General Baker and Charles J. McClure, the technician personnel officer for New York State. The plaintiff moved to amend the complaint to add additional parties and further requested the court to vacate the order denying preliminary relief. On December 19, 1974, the court permitted amendment of the complaint to include additional defendants Howard H. Callaway, Secretary of the Army, and Major General LaVern E. Weber, Chief of the National Guard Bureau. The court denied plaintiff's further application for temporary relief.

The plaintiff then deposed Major General Weber. Stipulations of fact were prepared and signed on December 24, 1975, and filed with the court on January 6, 1976. In September of 1976, the defendants moved to dismiss and the plaintiff cross-moved for summary judgment. On December 27, 1976, both motions were denied. Thereafter, a number of pretrial meetings were held and on February 12, 1979, the parties filed a stipulation agreeing that the documents already filed with the court, including affidavits, depositions, the administrative record and exhibits, shall be considered the trial record in lieu of testimony. Oral argument was held on March 27, 1979.

The gist of plaintiff's original claim is contained in ¶ 26 of his amended complaint:

> [T]he length and/or style of plaintiff's hair and moustache had no reasonable relation to the requirements of his employment, or the competency or capacity of plaintiff to perform his Civil Service duties. Nor have the defendants any Constitutionally justifiable reason to regulate plaintiff's hair and grooming while plaintiff is employed as a Civilian Federal Technician . . . .

He alleges in his complaint that his employment was improperly terminated because the hair-length requirements violate his first amendment rights to freedom of ex-

pression and his fifth amendment rights to personal liberty and due process. He also raises a procedural due process claim arguing that he was denied a fair hearing by an impartial hearing officer in connection with his suspension. Finally, he claims that the grooming requirements deny equal protection because other categories of technicians are not required to meet these requirements. He seeks various forms of relief including reinstatement, compensatory damages, attorneys' fees, and punitive damages. He also seeks declaratory and injunctive relief. Jurisdiction is alleged under 28 U.S.C. §§ 1331(a), 1361, 2201, and 2202, and 5 U.S.C. § 702.

The plaintiff was hired as a National Guard technician on May 28, 1972. Employment as a technician is governed by 32 U.S.C. § 709, which provides in pertinent part as follows:

(a) Under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, and subject to subsection (b) of this section persons may be employed as technicians in—

(1) the administration and training of the National Guard; and

(2) the maintenance and repair of supplies issued to the National Guard or the armed forces.

(b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

\* \* \* \* \* \*

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required

under subsection (b) to be a member of the National Guard.

(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

\* \* \* \* \* \*

(3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned;

(4) a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation shall be accomplished by the adjutant general of the jurisdiction concerned;

(5) a right of appeal which may exist with respect to clause (1), (2), (3), or (4) shall not extend beyond the adjutant general of the jurisdiction concerned; and

(6) a technician shall be notified in writing of the termination of his employment as a technician and such notification shall be given at least thirty days prior to the termination date of such employment.

During the regular work week, National Guard technicians maintain and secure the equipment and supplies needed by the Guard units. On weekends and during annual field training, the technicians attend National Guard drill sessions just as any other member of the Guard. If a Guard unit is called into state or federal service, the technicians play a key role in mobilizing the unit in a rapid and smooth manner.

On several occasions prior to his discharge, the plaintiff was advised by his supervisor that his mustache and his hair length did not comply with the grooming requirements. The plaintiff failed to comply with these standards and therefore was suspended for two five-day periods. Eventually, because of his continuing refusal to comply with the regulations, he was advised that his employment would be terminated.

In accordance with applicable regulations, a hearing regarding the suspensions was held before an Administrative Law Judge on May 30, 1974. Plaintiff was represented by counsel who cross-examined the four defendants testifying at the hearing. In addition, the plaintiff and two other witnesses testified on his behalf. The record of the administrative hearing has been filed with the court and is part of the trial record of this case. Based on the recommendations of the hearing officer, the plaintiff's suspension and termination were upheld. This lawsuit then ensued.

In 1976, the Supreme Court decided *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). In that case, the Court upheld a hair-length regulation challenged by a county policeman as a violation of his rights of freedom of expression, due process, and equal protection. After that case was decided, and after depositions were taken indicating that the basis for the hair-length requirement was defendants' assumption that technicians were military personnel, the focus of plaintiff's case shifted from the hair-length regulation to the defendants' authority to require technicians in their civilian capacities to wear uniforms. He does not object to complying with military standards of appearance while at drill and annual field training as a guardsman, but does object to meeting the standards while employed during the week in his technician job.

The rationale explained by the defendants for requiring the plaintiff to comply with grooming standards is the National Guard regulation requiring them to wear military uniforms when performing their duties as technicians. This regulation, promulgated by the Secretaries of the Army and the Air Force on September 7, 1972, § 213.2 of the Technicians' Personnel Manual, states in pertinent part as follows:

Technicians in the excepted service will wear the military uniform appropriate to their service and federally recognized grade when performing technician duties, and will comply with the uniform standard of the services.

It is undisputed that the regulation was adopted and promulgated in a procedurally proper manner. The reasons given by the defendants for the promulgation of this regulation are that it promotes uniformity, maintains a system of discipline, encourages the military spirit, increases the readiness of the military force, and enhances identification of the National Guard as a military organization within the community. These reasons were brought out through the depositions, exhibits, and affidavits filed as part of the trial record. The plaintiff, through his proof, challenges these reasons but more fundamentally challenges the defendants' assertion that technicians are military personnel subject to regulation by the defendants. The plaintiff contends that technicians are civilian employees, not military personnel, and that it violates his constitutional rights to impose military grooming and dress requirements as a condition of civilian employment. Thus, although an issue of fact exists as to whether the regulation was adopted pursuant to a legitimate military purpose, the critical issue is whether the technicians' activities during the week are a proper subject of military decision and control. If they are, then the court is precluded from reviewing the correctness of the military decision by a long line of cases showing unique judicial deference to military decisions. *See, e. g., Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

I find that jurisdiction to review the plaintiff's claim exists under 28 U.S.C. §§ 1331 and 1361. *Chaudoin v. Atkinson*, 494 F.2d 1323, 1327–30 (3d Cir. 1974). However, for the reasons stated below, I find that the plaintiff has failed to state a constitutional claim. Accordingly, judgment is granted to the defendants.

In *Kelley v. Johnson, supra*, the Supreme Court upheld a county regulation limiting the length of a county police officer's hair in the face of claims that it violated his

rights to freedom of expression, due process, and equal protection. The Court found that the hair-length regulation was part of an overall scheme regulating the choice of organization, dress and equipment of law enforcement personnel. Recognizing that the regulation necessarily restricted the respondent's freedom of choice in personal matters, the Court nevertheless found that it was entitled to a presumption of legislative validity and that the burden was on the respondent to show that the regulation bore no rational connection to the state's police power. Noting that the answer was so clear that the district court was justified in dismissing the complaint without taking evidence, the Court held that the overall need for discipline, esprit de corps, and uniformity provided sufficient justification to defeat the respondent's claim.

A number of courts have upheld the discretionary power of the military to regulate the hair length and appearance of military personnel, including the National Guard. *See, e. g., Gianatasio v. Whyte*, 426 F.2d 908, 911 (2d Cir.), *cert. denied*, 400 U.S. 941, 91 S.Ct. 234, 27 L.Ed.2d 244 (1970); *Raderman v. Kaine*, 411 F.2d 1102, 1106 (2d Cir.), *cert. dismissed*, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969). The primary justifications offered by defendants in this case for the uniform requirement are identical to those upheld in *Kelley*: uniformity, discipline, and esprit de corps. Assuming therefore that technicians' activities during the week are a proper subject of National Guard regulation, it is clear that the plaintiff has failed to meet his heavy burden of showing that the regulation is irrational or arbitrary.

The more difficult question urged by the plaintiff is whether the defendants have the authority to regulate technicians' activities during the week while the technicians are engaged in their civilian employment. The peculiar status of National Guard technicians as both civilian and military employees has given rise to a number of lawsuits addressing various aspects of technician employment. *See, e. g., Chaudoin v. Atkinson, supra* at 1331–32 (technician cannot be required to participate in military funeral as member of firing squad); *Simpson v. United States*, 467 F.Supp. 1122 (S.D.N.Y.1979) (requirement that technicians as a condition of employment be members of National Guard does not violate ADEA, which prohibits employment discrimination on the basis of age); *Allen v. United States*, 571 F.2d 14 (Ct.Cl.1978) (technician who is considered disabled for purposes of military service also must be considered disabled for purposes of civilian disability pension). At least two other courts have squarely addressed the issues presented here. Both rejected challenges made by civilian technicians in the National Guard to uniform and grooming requirements. I find these cases persuasive.

In *Syrek v. Pennsylvania Air National Guard*, 437 F.Supp. 236 (W.D.Pa.1977), civilian technicians in the Pennsylvania Air National Guard challenged the validity of the Guard's hair-length standards. Applying *Kelley v. Johnson, supra*, the district court held that the requirement was reasonably related to the defendants' legitimate interest in assuring the combat readiness of the National Guard. In reaching its conclusion, the court considered at some length evidence introduced at trial as to the role of the technicians in the operation of the Guard. It concluded that technicians were essential to combat readiness, and that their duties as technicians and as members of the National Guard were closely interrelated: they "perform their duties on military equipment using military procedure in a military environment." *Id.* at 240. The court also attached great significance to Congress' decision to organize and administer the civilian technician program within the military framework of the Guard. Under these circumstances, the court found that deference to the defendants' decision was appropriate under *Kelley*.

The court's analysis in *Syrek* was limited to the reasonableness of the hair-length

regulation in the context of the overall organizational structure. The broader and more fundamental question of the military's power over the technicians' activities during the week was explicitly addressed in *Bruton v. Schnipke,* 404 F.Supp. 1032 (E.D.Mich. 1975). In *Bruton,* the plaintiffs were Air Force National Guard technicians who attacked the constitutionality of the identical military uniform regulation challenged here. They pointed out a number of respects in which technicians when performing full-time civilian work in their units are treated differently from regular military personnel. For instance, technicians have collective bargaining rights, they receive overtime pay for work in excess of 40 hours per week, they are not subject to the Uniform Code of Military Justice, and they receive federal civil service pay and benefits rather than military pay and benefits.[1] Plaintiffs also offered evidence indicating that the uniform requirement was unnecessary because persons not in military uniform had in the past, although in smaller numbers, performed the same work performed by Guard technicians. In response, the defendants gave undisputed testimony as to the essential role of the National Guard in the "total forces concept" of national defense and the necessity of employing technicians to maintain the combat readiness of Guard units. They also offered extensive testimony as to the purposes of the uniform requirement.

Accepting all of the evidence in the light most favorable to the plaintiffs, the court found that the appearance of technicians was a proper subject of military decision in view of the military aspects of technicians' jobs, the statutory requirement that they be active members of the National Guard, and the fact that technicians' work is controlled by the military. The court also found that the justifications for the uniform requirement bore a rational relation to the National Guard purpose. As for the nonmilitary characteristics of technicians' jobs, the court noted that these in no way altered the military nexus or function. Finally, the court found that evidence indicating that the uniform requirement was unnecessary did not change the military nature of the work and did not show that the regulation had no rational basis.

■ I find that *Bruton* and *Syrek* are controlling. The evidence in this case is very similar to the evidence in *Bruton.* The plaintiff has submitted proof that technicians historically were not subject to military grooming requirements and that the wearing of a uniform is not essential or necessary to the performance of their duties. The relevant question, however, is not whether uniforms are essential but where there is a rational basis for requiring them. *Kelley v. Johnson, supra; Bruton v. Schnipke, supra.* Considering the clear interrelationship between technicians' duties and the effective functioning of the Guard in conjunction with the statutory requirement that all technicians as a condition of employment be active members of the Guard, I conclude it is rational, not unconstitutional, for the Guard to establish standards of appearance for technicians.

Prior to the adoption of 32 U.S.C. § 709, National Guard technicians were state employees whose salaries were paid by the United States, but whose benefits were determined by a variety of state programs. The primary purpose of § 709, enacted in 1968, was to establish Guard technicians as federal employees and to provide them with the full range of civil service fringe and retirement benefits available to federal employees. H.Rep.No.1823, 90th Cong., 2d Sess. (1968), *reprinted in* 3 U.S.Code Cong. & Admin.News pp. 3318, 3319–21 (1968). Statements in the legislative history referring to technicians as federal civilian employees, not military personnel, must be viewed in this context. Contrary to plaintiff's arguments, the uniform requirement

---

1. During their Guard service, technicians receive a military salary, are subject to the Uniform Code of Military Justice, and are eligible for military retirement benefits.

will not destroy the civilian characteristics of technicians' positions because they will remain entitled to federal civil service benefits. Congress has chosen to administer the technician program within the military framework of the Guard and to give technicians dual status as civilians and military personnel. The legislative history of the Act indicates that Congress contemplated a single technician position, which "would entail a composite of inseparable, simultaneous military and civilian duties." *Allen v. United States, supra* at 18, *citing* H.Rep. No.1823, *supra* at 3318. This intent is reflected in the statutory requirement of enrollment in the Guard as a condition of employment as a technician. Although the plaintiff would like a clear division between civilian duties and military duties, this simply is not possible because of the dual qualification aspect of the position.

The plaintiff cites decisions of the Federal Labor Relations Council, finding that technicians' clothing is a proper subject of collective bargaining between the technicians' union and the Guard. These decisions, however, are not in point because they address the question of whether uniforms are essential or advance a compelling need, not whether a rational basis exists for the requirement.

·For these reasons, in addition to the reasons discussed in *Bruton* and *Syrek, supra,* the plaintiff's arguments must be rejected.

■ The plaintiff also argues that the grooming standards violate his rights to equal protection because they do not apply to either female technicians or to male Federal Reserve technicians. However, he cites no cases directly supporting his argument and I refuse to adopt it. A number of courts have upheld different grooming standards for male and female employees under Title VII. *See, e. g., Longo v. Carlisle DeCoppet & Co.,* 537 F.2d 685 (2d Cir. 1976). In addition, differences in conditions of employment between National Guard technicians and Federal Reserve technicians have been upheld as rational against equal protection challenges. *See, e. g., Simpson v. United States, supra.*

■ The final argument raised by the plaintiff is that he was denied a fair hearing on his suspension before an impartial hearing officer. Under applicable regulations, numerous procedural protections are afforded to technicians subject to suspension or termination. In this case, a hearing was held at which the plaintiff was represented by an attorney and had the opportunity to call his own witnesses and to cross-examine the defendants'. The transcript was filed as part of the trial record. The plaintiff has not cited any facts or law in support of his claim that the hearing officer was not impartial. Accordingly, this argument also must fail.

The Clerk is directed to enter judgment in favor of the defendants.

So ordered.