**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2986, AFL–CIO, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**and**

**Oregon National Guard and United States Department of Defense, Intervenors.**

**NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, LOCALS R12–125, R12–132, R12–146, R12–150 AND R12–105, and Locals R12–130, and R12–145, Petitioners,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**and**

**California National Guard, Nevada National Guard, and United States Department of Defense, Intervenors.**

Nos. 84–7609, 84–7654 and 84–7655.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1985.

Decided Oct. 31, 1985.

William J. Stone, Mark D. Roth, American Federation of Government Employees, Washington, D.C., Michael J. Kelly, West Coast Counsel, Burbank, Cal., for petitioner.

William Tobey, Ruth Peters, Federal Labor Relations Authority, Marc Richman and William Kanter, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before ALARCON and POOLE, Circuit Judges, and ORRICK,[*] District Judge.

POOLE, Circuit Judge:

The American Federation of Government Employees and the National Association of Government Employees, (collectively the "Unions"), petition to set aside orders of the Federal Labor Relations Authority dismissing their respective complaints against the Oregon Army and Air National Guard, and the California and Nevada National Guards (collectively the "National Guard" or "Guard"), for refusing to include in their collective bargaining agreements a provision that would permit civilian technicians to wear civilian clothing at work. We affirm.

## I.

Each of these cases arose out of an impasse in collective bargaining negotiations over union proposals to give Guard civilian technicians the option of wearing either military uniforms or agreed-upon standard civilian attire while performing certain of their duties. The Federal Service Impasses Panel ("Panel") was requested in each instance to resolve the dispute. The Panel directed the parties to adopt language in their collective bargaining agreements per-

[*] Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

mitting the option of wearing civilian clothing and to negotiate concerning circumstances when military uniforms could be required. In each case, the Guard failed to comply with the Panel's order. Complaints were then issued by the Authority against the Oregon, California, and Nevada Guards alleging the commission of unfair labor practices because of their failure to comply with the Panel's orders.

In lieu of an evidentiary hearing, the parties to the Nevada and Oregon cases stipulated the record, permitting direct decision by the Authority. The Authority first decided the Nevada Guard case,[1] concluding that the Guard had violated § 7116(a)(1) and (6)[2] of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101 *et seq.* (the Act). A subsequent motion for reconsideration was denied. Relying on its Nevada Guard decision, the Authority similarly found a violation of the Act by the Oregon Guard.[3]

The California Guard case was decided by an Administrative Law Judge on motion for summary judgment by the Authority's General Counsel. The ALJ determined that the California Guard had committed unfair labor practices in violation of § 7116(a)(1), (5), (6), and (8).[4] The ALJ's findings and conclusions were subsequently adopted in large part by the Authority, which relied on its prior Nevada decision.[5]

All three National Guard units petitioned us for review pursuant to 5 U.S.C. § 7123(a). While those petitions were pending, the Second Circuit issued its decision in a case involving similar issues, *State of New York, Division of Military and Naval Affairs (Albany, New York) v. FLRA*, 696 F.2d 202 (2d Cir.1982) *appeal after remand*, 757 F.2d 502 (1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). The court found that the Authority had failed to consider whether the Guard's policy of requiring civilian technicians to wear military uniforms concerns a management right to determine unilaterally the methods and means of performing work under § 7106(b)(1)[6] of the Act. Accordingly, the court remanded the case to the Authority for the development of a record appropriate for judicial review concerning whether civilian attire is a negotiable matter.

The Authority then sought and obtained from this court a remand of the Oregon, California, and Nevada Guard cases for further consideration of the applicability of § 7106(b). A notice of reopened proceedings was issued, and position statements and arguments were requested of and submitted by the parties on "whether the attire which National Guard technicians wear while engaged in their daily duties as civil-

**1.** *State of Nevada National Guard and National Association of Government Employees, Locals R12–130 and R12–145,* 7 FLRA 245 (1981).

**2.** Section 7116(a) provides in relevant part that it shall be an unfair labor practice for an agency—

 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

 \* \* \* \* \* \*

 (6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter.

**3.** *Military Department, State of Oregon, Oregon Army and Air National Guard, Salem, Oregon and American Federation of Government Employees, Local 2986,* 8 FLRA 541 (1982).

**4.** *See* n. 2. Section 7116(a)(5) and (8) provide that it shall be an unfair labor practice for an agency—

 (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;

 \* \* \* \* \* \*

 (8) to otherwise fail or refuse to comply with any provision of this chapter.

**5.** *State of California National Guard and National Association of Government Employees, Locals R12–125, R12–132, R12–146, R12–150 and R12–105,* 8 FLRA 54 (1982).

**6.** Section 7106(b)(1) of Title 5 U.S.C. provides in pertinent part that:

 (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

 (1) at the election of the agency, on the \* \* methods, and means of performing work.

ian technicians is a matter which is negotiable only at the election of the [employer] pursuant to section 7106(b)(1) of the Statute." The Authority concluded in each case "that the determination by the [National Guard] that technicians must wear the military uniform while performing technician duties constitutes management's choice of 'methods, and means of performing work' within the meaning of section 7106(b)(1) of the statute." The Authority relied upon its New York Guard decision on remand from the Second Circuit, which reached the same result, *Division of Military and Naval Affairs, State of New York, Albany, NY and New York Council, Association of Civilian Technicians,* 15 FLRA No. 65 (1984), since the facts and positions of the parties were found to be substantially identical.

The petitions concerning the Authority's rulings in the California and Nevada Guard cases were consolidated on appeal, and were heard simultaneously with the Oregon Guard case. The Nevada, California, and Oregon National Guards, and the United States Department of Defense, intervened as respondents.

## II.

 Pursuant to 5 U.S.C. § 7123(c), judicial review of the Authority's orders is on the record in accordance with the Administrative Procedure Act, 5 U.S.C. § 706, which provides that agency action shall be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *National Treasury Employees Union v. FLRA,* 767 F.2d 1315, 1316 n. 3 (9th Cir.1985); *National Treasury Employees Union v. FLRA,* 732 F.2d 703, 705 (9th Cir.1984); *New York Council, Association of Civilian Technicians v. FLRA,* 757 F.2d 502, 507 (2nd Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985) (*"New York Guard"*). Considerable deference is to be given the Authority "when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *New York Guard,* 757 F.2d at 507 (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted)). The factual findings of the Authority are conclusive if supported by substantial evidence on the record as a whole. 5 U.S.C. § 7123(c). We will defer to the Authority's interpretation of the Act if it is "reasoned and supportable." *National Treasury,* 732 F.2d at 705 (citing *Navy Public Works Center v. FLRA,* 678 F.2d 97, 99 (9th Cir.1982)).

## III.

The primary issue presented for our review is whether substantial evidence supports the Authority's decision that civilian technician attire is a "methods and means of performing work," and thus a subject for bargaining only at the employer's election pursuant to 5 U.S.C. § 7106(b)(1). Three other circuits have recently considered the issue, and were persuaded on substantially similar factual records to defer to the Authority. *National Association of Government Employees, Locals R5–91, R5–107, and R5–120 v. FLRA,* 771 F.2d 1449 (11th Cir.1985); *American Federation of Government Employees, Local 3013 v. FLRA,* 762 F.2d 183 (1st Cir.1985) (*"Maine and Puerto Rico Guards"*); *New York Guard,* 757 F.2d 502 (2nd Cir.1985). We are convinced that their reasoning is sound.

In its decision on our remand, the Authority concluded that the uniform requirement fosters military discipline, promotes uniformity, encourages *esprit de corps,* increases the readiness of military forces for early deployment, and enhances the identification of the National Guard as a military organization. The Authority noted that the Guard is a military organization with a military mission and that the Guard Technician workforce was established primarily to enable the Guard to carry out that mission. It relied in part on court decisions that had found a rational relationship between the Guard's ability to fulfill its mission and the uniform requirement. *See Klotzbach v.*

*Callaway,* 473 F.Supp. 1337, 1343 (W.D.N. Y.1979); *Syrek v. Pennsylvania Air National Guard,* 437 F.Supp. 236, 240 (W.D. Pa.1977); *Bruton v. Schnipke,* 404 F.Supp. 1032 (E.D.Mich.1975); *Bruton v. Schnipke,* 370 F.Supp. 1157, 1163 (E.D.Mich.1974). The Authority concluded that those decisions, and the facts in the record, demonstrated that "there is a direct and integral relationship between the uniform wearing requirement and the duties technicians perform in furtherance of the overall military mission of the National Guard." *Division of Military and Naval Affairs, State of New York, Albany, NY and New York Council, Association of Civilian Technicians,* 15 FLRA No. 65 at 294.[7]

■ The petitioners argue that, because the findings of the Impasse Panel concerning the relationship between the uniform requirement and the performance of Guard duties were contrary to those of the Authority, substantial evidence does not support the Authority's decision. They correctly note that the Authority failed to discuss the Panel findings in its decision or to provide any basis for rejecting those findings. That the Authority reached a different factual conclusion from the Panel, however, does not mean that the record did not contain substantial evidence to support its determination. We agree with the Second Circuit that

> If this case involved credibility determinations made by a trial examiner, the Authority's disagreement with the Panel's factual findings would be subject to considerable question. Yet, here the evaluation of the facts is a matter of weighing priorities, not assessing the demeanor of witnesses. Thus, the FLRA's findings cannot be said to be unsupported by substantial evidence.

757 F.2d at 512. Although the Authority did not discuss the Panel's findings in its decision, it did provide the factual basis for its contrary conclusions. Thus, we con-

clude that the decision is "reasoned and supportable," and must be upheld. *National Treasury,* 732 F.2d at 705.

### IV.

The Unions also claim that the Authority failed to apply the appropriate "methods and means" standard, as established by its predecessor agency, the Federal Labor Relations Council ("Council"). The Council defined "methods and means" by applying a "compelling need" or "functional relationship" test. Decisions of the Council concerning the negotiability of proposals relating to Guard attire considered whether the uniform requirement was essential, as distinguished from helpful or desirable, to the accomplishment of the Guard's mission. *See Kansas National Guard,* 5 FLRC 124 (1977); *State of New Mexico National Guard,* 5 FLRC 146, *request for reconsideration denied,* 5 FLRC 336 (1977). The Council found that union proposals permitting technicians to wear clothing other than military dress were negotiable because the Guard had failed to show a "compelling need" demonstrating a functional relationship between the day-to-day work performed by technicians and the dress requirement. *Id.; accord, State of Ohio National Guard,* 6 FLRC 704, 707–09 (1978) (close functional relationship was demonstrated between the wearing of the uniform and the conduct of the organizational readiness inspection).

The Unions contend that the Authority, when applying the "methods and means" test in the cases here under review, inexplicably and erroneously departed from the more stringent "compelling need" standard employed by the Council. We agree. The Authority relied on its decision in *National Treasury Employees Union and United States Customs Service, Region VIII, San Francisco, California,* 2 FLRA 255 (1979), which defined means according to the defi-

---

**7.** In its decisions and orders upon remand in the cases before us, the Authority relied on the reasons stated in *Division of Military and Naval Affairs, State of New York, Albany, NY and New York Council, Association of Civilian Techni-* *cians,* 15 FLRA No. 65 (1984), because of the similarity of the facts and positions of the parties. Thus, we refer to that decision to determine the bases for the Authority's Oregon, California, and Nevada Guard rulings.

nition in *Webster's Dictionary.* "Means" was thus defined as "anything used to attain, or make more likely the attainment of, a desired end." *Id.* at 258. In the context of section 7106(b)(1), the Authority determined that "means" refers to "any instrumentality, including an agent, tool, device, measure, plan, or policy used by the agency for the accomplishing or furthering of the performance of its work." (*Id.*)

The "means" standard employed by the Authority did not require the Guard to demonstrate a compelling need for military dress before the uniform requirement would be subject to bargaining only at the Guard's election. "A direct and integral relationship between the uniform wearing requirement and the duties technicians perform in furtherance of the overall military mission of the National Guard," was sufficient to make the requirement a permissive subject of bargaining between the Unions and the Guard units. The fact that the Authority's standard was less stringent than that of its predecessor is best indicated by the opposite conclusions reached by the two agencies on essentially the same factual record.

Since the Authority departed from the "methods and means" test established by the Council, the question then becomes whether that departure requires us to set aside the decisions as arbitrary and capricious. We conclude that it does not.

■ The Authority has broad rule-making and interpretive powers in administering the Federal Service Labor Management Relations Statute and in resolving unfair labor practice complaints. 5 U.S.C. § 7105(a)(1), (a)(2)(G); *American Federation of Government Employees v. FLRA,* 716 F.2d 47, 50 (D.C.Cir.1983). We agree with the Second Circuit that Congress did not intend for the Authority to be bound by the policies of the Council, but intended that it take a fresh and independent approach to federal labor relations. *See New*

York Guard, 757 F.2d at 509; *see also American Federation of Government Employees,* 716 F.2d at 50 (Authority's abandonment of "in-part" test for determining whether a labor violation occurs when management fails to promote an employee was consistent with Congressional intent and a reasonable intepretation of the Act); *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 562 n. 89 (D.C. Cir.1982); *Department of Defense v. FLRA,* 659 F.2d 1140, 1162–63 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Consequently, the Authority was free to depart from the "functional relationship" or "compelling need" test of its predecessor without giving any reasoned explanation for the change.[8]

### V.

■ The petitioners also claim that we must set aside the Authority's decision because of three procedural errors allegedly committed on remand. First, the Unions argue that they were entitled to a hearing for the taking of additional material evidence. We reject this claim on the same basis that it was rejected by the First and Second Circuits. *Maine and Puerto Rico Guards,* 762 F.2d at 184; *New York Guard,* 757 F.2d at 511. The Unions requested no hearing and the General Counsel with whom the Unions were allied, objected successfully to the Guard's hearing request. *Id.* Additionally, the procedures employed by the Authority in these cases was similar to those previously used by the Authority in determining other negotiability disputes under § 7106. *See New York Guard,* 757 F.2d at 511.

Second, petitioners claim that the Authority improperly denied their motion to strike the affidavits that the Guards attached to their statements of position on remand. This argument is unfounded. *See Maine and Puerto Rico Guards,* 762

---

**8.** Generally, when an agency decides to implement a policy change, it is required to provide a reasoned analysis for that change. *See Motor Vehicle Manufacturers Association of the United* States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *New York Guard,* 757 F.2d at 508 & 510.

F.2d at 184. The Authority considered only evidence relating to the uniform requirement as a "means" of accomplishing the Guard's mission, which was the limited subject of the remand inquiry. Although petitioners argue that the Authority erred in considering respondents' affidavits, which contained information relevant to the issue under review, they did not indicate that they could not also have submitted affidavits, had they so desired. Moreover, neither the Unions nor the General Counsel sought to challenge respondents' affidavits by presenting counter affidavits or other similar evidence.

Finally, petitioners claim that the Authority ignored the mandate of 5 U.S.C. 7118(a)(8) requiring that it set forth its findings of fact on all factual issues presented by the record. The purpose of section 7118(a)(8), however, is to facilitate meaningful judicial review, *New York Guard*, 757 F.2d at 511, and that purpose was satisfied here. The Authority has provided us with ample factual bases to support its legal conclusion and to permit us to give that conclusion considered review.

## VI.

We defer to the Authority's expert judgment on the appropriate "methods and means" standard to be applied under § 7106(b)(1) of the Federal Service Labor-Management Relations Statute, and conclude that substantial evidence on the record as a whole supports its determination that the Guard uniform requirement constitutes a "means," negotiable only at the employer's election. The petitioners' claims of procedural error committed by the Authority on remand are rejected, and their petitions for review are

DENIED.

