NATIONAL TREASURY EMPLOYEES UNION, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

United States Customs Service, Intervenor.

No. 82–7534.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 1983.

Decided May 3, 1984.

**704**

Gregory O'Duden, Washington, D.C., for petitioner.

William R. Tobey, Asst. Sol. Gen., F.L.R.A., Washington, D.C., for respondent.

Carl D. Cammarata, San Francisco, Cal., for intervenor.

Before DUNIWAY, ALARCON, and BOOCHEVER, Circuit Judges.

DUNIWAY, Circuit Judge:

This case arises from an unfair labor practice proceeding under the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* (Supp. V 1981). At issue is whether denial by the Federal Labor Relations Authority of a status quo ante make-whole remedy was an abuse of the Authority's discretion. We hold that there was no abuse of discretion, and affirm the order of the Authority.

### I. *The Facts.*

The facts are stipulated by the parties. In September 1979, the United States Customs Service informed the National Treasury Employees Union that Customs planned to establish, in addition to its existing daytime shift, three new shifts at Honolulu International Airport in order to cover a new schedule of incoming flights. The change minimized overtime payments to employees. Customs maintained that creating the new shifts was a nonnegotiable management right reserved to Customs by the Act. *See* 5 U.S.C. § 7106. On November 4, 1979, while the parties were involved in negotiations, Customs unilaterally implemented the new hours, as follows:

Seven employees remained in the previously scheduled, unchanged tours of duty from 8:00 a.m. to 4:00 p.m. New tours of duty were established as follows: 1) 6:00 a.m. to 2:30 p.m., 2) 6:30 a.m. to 3:00 p.m., 3) 9:00 a.m. to 5:30 p.m. E.R. 50. The Union's unfair labor practice charge followed. *See* 5 U.S.C. §§ 7116(a)(1), 7116(a)(5), 7118.

The Authority's Administrative Law Judge concluded that Customs' refusal to bargain over the Union's proposals with regard to starting and quitting times violated the Act, and he ordered Customs to bargain over the shift times. He ordered a limited remedy:

To the extent that any final agreement reached by the parties results in different starting and quitting times and lunch hours than those unilaterally established on November 4 and 13, 1979, make whole any unit employees for any overtime loss he or she might have suffered since such dates.

*Department of the Treasury, United States Customs Service, Region VIII,* 1982, 9 FLRA 606, 618. Customs appealed to the Authority.

The Authority agreed that Customs violated the Act by refusing to bargain and affirmed the bargaining order. 9 FLRA at 608. The petitioning Union does not attack the bargaining order. The Authority, however, rejected any status quo ante remedy. It stated:

The Authority finds that such a remedy is not warranted herein. Thus, since this case involves the establishment of new shifts, there are no preexisting starting or quitting times, or lunch periods, which the Authority may now order the Respondent to reinstate while the parties engage in collective bargaining with respect thereto. Accordingly, the Authority finds that a *status quo ante* remedy is not appropriate herein, and therefore adopts the Judge's recommended Order in this regard.[2]

[2] For a similar result, see *United States Customs Service, Region V, New Orleans, Louisiana,* 9 FLRA No. 15 (1982).

9 FLRA at 607.

The Union attacks the denial of the status quo ante remedy as an abuse of the

Authority's discretion, arguing that the proper remedy is to pay affected employees overtime pay as though Customs had not implemented the changes.

## II. *Jurisdiction.*

■ Customs asserts that, pursuant to a pre-hearing agreement, none of the parties argued or presented evidence to the Judge ·supporting a status quo ante remedy. Customs says that the resulting lack of evidence in the record regarding such a remedy deprives this court of subject matter jurisdiction to consider a status quo ante remedy, because judicial review of the Authority's order must be "on the record." *See* 5 U.S.C. §§ 706 (1976), 7123(c) (Supp. V 1981). The record indicates, however, that before the Judge's and the Authority's decisions the issue was squarely raised by the Union and the Authority's General Counsel in their post-hearing briefs. We find the record adequate for purposes of reviewing the propriety of the Authority's denial of a status quo ante remedy.

■ Nor are we persuaded that imposition of a status quo ante remedy would deprive Customs of due process. Assuming that Customs is entitled to due process, it has had full opportunity to present to the Authority and this court its arguments opposing such a remedy.

## III. *Denial of the Status Quo Ante Remedy.*

### A. *Standard of Review.*

■ The Act vests the Authority with broad discretion to fashion appropriate remedies for violations of its provisions. 5 U.S.C. § 7105(g)(3). The Authority's decision is valid unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 1983, — U.S. —, — n. 7, 104 S.Ct. 439, 444 n. 7, 78 L.Ed.2d 195 (1983). We must defer to the Authority's interpretations of the Act if they are reasoned and supportable. *Navy Public Works Center v. FLRA,* 9 Cir., 1982, 678 F.2d 97, 99.

■ We may look to decisions under the National Labor Relations Act for guidance by analogy. *See, e.g., Turgeon v. Federal Labor Relations Authority,* D.C.Cir., 1982, 677 F.2d 937, 939–40. However, the two acts are not identical. There is no right to strike against the government, and the Act defines matters that must be bargained about and others that are subject to bargaining only at the election of the government agency.

■ The Authority cannot arbitrarily impose different remedies in similar situations. *Cf. Burinskas v. NLRB,* D.C.Cir., 1966, 357 F.2d 822, 827 (NLRB cannot treat similar situations in dissimilar ways). To do so would be arbitrary.

In the case before us, the Authority consistently applied its reasoned and supportable precedent, *United States Customs Service, Region V,* 1982, 9 FLRA 116. There, until March 25, 1979, employees worked from 8:00 a.m. to 4:00 p.m. Monday through Friday. (9 FLRA 117.) Customs decided "to establish a second shift with hours of 2 pm to 10 pm, and to change the hours of the existing shift for most of the pilots and air officers to 10 am to 6 pm." (9 FLRA 117.) The Authority concluded:

> The Authority agrees with the Judge that the decision to establish the second shift or tour of duty involved the "numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty" within the meaning of section 7106(b)(1) of the Statute and, thus, was negotiable only at the election of the agency. In view of the Respondent's election not to negotiate the matter, the bargaining obligation with respect to that portion of the decision was limited to procedures to be observed in implementation of, and appropriate arrangements for employees adversely affected by, management's decision to establish the second shift.

(9 FLRA 118.) (footnote omitted). On the other hand, as to the original shift or tour of duty, the Authority held:

With regard to the decision to change the starting and quitting times of the previously existing first shift, however, and in disagreement with the Judge, the Authority finds that the Respondent had a duty to bargain with NTEU [the Union] concerning such conditions of employment inasmuch as the record fails to establish that the change effectuated by the Respondent was determinative of the numbers, types or grades of employees or positions assigned to a work project or tour of duty, so as to render the matter negotiable only at the Respondent's election under section 7106(b)(1) of the Statute.

*Id.* The Authority, as to the original shift, awarded a status quo ante remedy (9 FLRA 119). That question is not involved here. As to the new shift, the Authority held:

However, the Authority further finds that a *status quo ante* remedy is not warranted herein with respect to the impact and implementation of (as opposed to the decision to create) the newly established second shift.... In this regard, the Authority notes particularly that the Respondent acted within its reserved rights under section 7106(b)(1) of the Statute in establishing the new shift or tour of duty, and that, as a new shift, there were no preexisting starting and quitting times which the Authority may order the Respondent to reinstate while the parties engage in collective bargaining with respect thereto. Accordingly, the Authority finds that a *status quo ante* remedy is not required or necessary to effectuate the purposes and policies of the Statute concerning the new shift.

*Id.* at 119–20.

■ The decision is squarely in point here, and the Authority followed it. In this case the parties stipulated and the Judge found that Customs had established new shifts or tours of duty. *United States Customs Service, Region VIII,* 1982, 9 FLRA 606, 616. The Authority affirmed and adopted all of the Judge's findings. 9 FLRA at 606–07. The finding is the only

one possible on this record. The Authority properly ordered Customs to negotiate the starting and quitting times and lunch hours of the newly established tours of duty. 9 FLRA at 608, ¶ 2(a). Citing *Customs, Region V* (the only case cited in its decision), the Authority rejected the propriety of status quo ante remedies in this case. 9 FLRA at 607 n. 2, 608 n. 3.

■ The dissent says that usually a status quo ante remedy will best effectuate the purposes of the Act by compensating employees and deterring violations. We might think so, but the Authority, exercising its discretion to fashion appropriate remedies under 5 U.S.C. § 7105(g)(3), rejected a status quo remedy under these circumstances. If an agency's construction of the statute that it is primarily responsible for implementing is reasonably defensible, we may not reject that construction simply because we prefer another view. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 9 Cir., 1982, 672 F.2d 732, 735, *rev'd on other grounds,* 1983, — U.S. ——, 104 S.Ct. 439, 78 L.Ed.2d 195. The Authority's decision not to use status quo ante remedies for unfair labor practices involving the implementation of new shifts or tours of duty is not unreasonable, notwithstanding the possibility of acceptable methods of calculating back-pay awards. The Authority stated its reasons:

Such an order would be inconsistent with the Authority's conclusion that a *status quo ante* remedy is unwarranted in the circumstances of this case, and, further, would be speculative in terms of identifying the tours of duty to which each employee might have been assigned and which employees, if any, might have been assigned overtime.

9 FLRA at 608 n. 3.

There is no support for a contrary view in *Customs, Region V.* Here, the Judge found that this case involved new shifts, the Authority agreed, and we must accept this finding unless it is arbitrary, capricious, or contrary to the Act. *See* 5 U.S.C. § 706(2)(A). It is not. Thus, *Customs, Region V* does not support application of a

status quo ante remedy here. On the contrary, it supports the denial of that remedy.

■■■■ It does not do to say that the primary issue is not the characterization of the change as "new" or "modified," but whether a bargainable management decision was involved (see Dissent at 710, 711). This ignores the two-step analytic structure that the Authority has consistently applied. Refusal to bargain about staffing decisions to create new shifts is no violation. Refusal to bargain about impact and implementation issues, such as starting and quitting times, is an unfair labor practice. Status quo remedies are generally appropriate for shift modifications, but not for violations involving new shifts. Thus, both whether a staffing or impact decision is involved and whether a new or modified shift is involved are "central issues." It is wrong to say that, in *Customs, Region V*, Customs' refusal to bargain over impact and implementation of the new shift did not violate the Act (see Dissent at 710). Referring specifically to starting and quitting times, the Authority found a violation and ordered Customs to bargain on request, but rejected the requested status quo ante remedy. 9 FLRA at 119–20. Thus, *Customs, Region V* held that whether failure to negotiate impact issues warranted status quo ante relief depends on whether the modification of a previously existing shift (yes) or the implementation of a newly established shift (no) is involved. *Id.* Here, only the three newly established shifts are involved.

Because the Authority's guidelines are reasonable and the Authority was not arbitrary in applying these guidelines to this case, we affirm the Authority's decision.

Affirmed.

BOOCHEVER, Circuit Judge, dissenting.

The Authority's broad discretion to fashion remedies must be exercised in a manner that will carry out the policies of the Act. *See* 5 U.S.C. § 7105(g)(3). The Authority's interpretations of those policies must be reasoned and supportable, *Navy Public Works Center v. Federal Labor Relations Authority*, 678 F.2d 97, 99 (9th Cir.1982), and its actions may not be arbitrary, capricious, an abuse of discretion, or otherwise not in accord with the law. 5 U.S.C. § 706(2)(A). Here, the Authority acted arbitrarily and gave too little weight to the policies of the Act in denying a status quo ante remedy.

Where an unlawful refusal to bargain results in a loss of income to the employees, a status quo ante remedy usually will best carry out the policies of the Act, unless substantial reasons exist not to impose such a remedy. Reimbursement of lost pay restores employees to the position they would have occupied absent the employer's unfair labor practice, and vindicates public policy opposing such violations. *Cf. Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 188–89 (1973) (award of backpay for wrongful discharge restores economic status quo); *Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981) (reimbursement of pay at original rate for reasonable period restores status quo where successor employer reduced wages without bargaining with union); *NLRB v. International Ass'n of Bridge, Structural & Ornamental Iron Workers*, 600 F.2d 770, 777 (9th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980) (reimbursement of lost pay for unfair labor practice vindicates public policy of National Labor Relations Act).

I do not understand the Authority to argue otherwise, and, in fact, the Authority itself has expressed similar sentiments. In *United States Customs Service, Region V*, 9 F.L.R.A. 116 (1982), the Authority found that imposition of a status quo ante remedy for a refusal to negotiate changes in working hours

> is necessary to effectuate the purposes and policies of the Statute.... [S]uch conclusion is supported by the literal language and the legislative history of the Statute and is necessary in order to avoid rendering meaningless the mutual obligation under the statute to negotiate concerning changes in conditions of employment.

*Id.* at 119. Because of the importance of such remedies, I examine closely the Authority's reasons for the denial.

Contrary to the majority's assertion, the Authority in the instant case did not base its denial of a status quo ante remedy on a theoretical distinction between "new shifts" and "modifications of existing shifts." Instead, the Authority's denial was predicated on what it saw as a practical stumbling block:

> [S]ince this case involves the establishment of new shifts, there are no preexisting starting or quitting times ... which the Authority may now order the Respondent to reinstate while the parties engage in collective bargaining with respect thereto.

*Department of the Treasury, the United States Customs Service, Region VIII*, 9 F.L.R.A. 606, 607 (1982) (hereinafter *Region VIII*). The Authority offered an additional reason for denying the limited remedy suggested by the Administrative Law Judge [ALJ]:

> Such an order [as recommended by the ALJ] ... would be speculative in terms of identifying the tours of duty to which each employee might have been assigned and which employees, if any, might have been assigned overtime.

*Id.* at 608 n. 3.

Neither reason withstands analysis. Both the Union and the ALJ offered starting and quitting times the Authority could "reinstate" for purposes of backpay: The Union suggested the original day shift hours; the ALJ would make retroactive the hours eventually agreed upon by the parties. Either might be appropriate. Nor would calculation of lost overtime be any more speculative in this case than in others where backpay routinely has been awarded. *See, e.g. NLRB v. Rice Lake Creamery Co.*, 365 F.2d 888, 891 (D.C.Cir.1966) (reimbursement of overtime lost by employees on strike); *Evans Products Co.*, 171 N.L.R.B. 1002 (1968) (award for overtime assignments improperly withheld by employer); *Marcus Trucking Co., Inc.*, 137 N.L.R.B. 1378, 1382–85 (1962) (award for overtime improperly eliminated by employer). To the extent that such calculations are rendered imprecise, the imprecision is due to Customs' unilateral alteration of hours in violation of the Act. Customs, not the employees, should suffer the consequences. *NLRB v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 572–73 (5th Cir. 1966) (uncertainty in employee's backpay award caused by employer's wrongful discharge should be resolved against the employer).

The majority does not appear to disagree with these views. Because the Authority has failed to offer valid reasons for its denial of a status quo ante remedy, I believe its decision is arbitrary and capricious and therefore merits reversal. 5 U.S.C. § 706(2)(A).

The majority, however, seizing on the Authority's ambiguous footnote reference to *United States Customs Service, Region V*, 9 F.L.R.A. 116 (1982) (hereinafter *Region V*), allows the Authority's counsel to shore up the agency's decision on grounds never mentioned by the Authority itself. This approach directly violates a well settled principle of administrative law: Reviewing courts may not " 'accept appellate counsel's *post hoc* rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.' " *Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974), *quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *see Industrial Union Department, AFL–CIO v. American Petroleum Institute*, 448 U.S. 607, 631 n. 31, 100 S.Ct. 2844, 2858 n. 31, 65 L.Ed.2d 1010 (1980) (Stevens, J.). This principle is recognized in the Ninth Circuit, *Phinpathya v. INS*, 673 F.2d 1013, 1020 (9th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), and has been applied repeatedly by other circuits in the area of labor law, *see e.g., Retail Store Employees Union Local 1001 v. NLRB*, 627 F.2d 1133, 1136 n. 13

(D.C.Cir.1979) (en banc), *reversed on other grounds,* 447 U.S. 607, 100 S.Ct. 2372, 65 L.Ed.2d 377 (1980); *NLRB v. Columbia University,* 541 F.2d 922, 931 (2d Cir.1976). At least one court has cited it as applicable to orders of the Authority itself. *See American Federation of Government Employees Local 1968 v. FLRA,* 691 F.2d 565, 574 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2085, 77 L.Ed.2d 297 (1983). I would refuse to decide whether a valid distinction might be made between "new shifts" and "modified shifts," because the Authority itself made no such finding in this case.

Even if I were to reach the issue, however, I find the majority's position unpersuasive. I do not read *Region V* to stand for the broad proposition the majority attributes to it, and I question whether the change in hours at issue actually constituted new shifts.

### A. The Authority's decision in Region V

*Region V* must be interpreted in light of section 7106 of the Act [1], which sets certain limitations on the bargaining duties of agency officials. The statutory language allows management unilaterally to determine agency organization and to assign employees. When management decisions involve the "numbers, types, and grades of employees," bargaining is only elective, and management's refusal to bargain does not violate the Act. Even where manage-

ment decisions involve such exempt staffing issues, however, management still must engage in limited negotiations over "arrangements for employees adversely affected by" [2] the staffing decision.

In *Region V,* Customs, without bargaining with the Union, divided employees on the original 8 a.m. to 4 p.m. shift into two groups. Two employees were assigned to new hours of 2 p.m. to 10 p.m. All the rest of the employees were assigned to new hours of 10 a.m. to 6 p.m. *Region V,* 9 F.L.R.A. at 127. The Authority characterized the 2 p.m. to 10 p.m. tour as a new shift, and the 10 a.m. to 6 p.m. tour as a change in the existing shift's hours. *Region V,* 9 F.L.R.A. at 118.

The ALJ in *Region V* made a significant finding with regard to the changes in starting and quitting times that is notably absent in the instant case:

It is concluded, therefore, that Respondent's establishment of new tours of duty, the designation of their duration, i.e. *their starting and quitting times,* and the number and types of employees assigned thereto were so directly and integrally related to the activity's staffing patterns—i.e., the numbers, types, and grades of employees assigned as to be determinative of such numbers, types and grades and therefore *were negotiable only at the election of the agency.*

*Id.* at 130 (citations omitted; emphasis added). The Authority affirmed the ALJ's fac-

---

1. Section 7106 provides in relevant part:
   (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
   (1) to determine the mission, budget, organization, number of employees ... of the agency; and
   (2) in accordance with applicable laws—
   (A) to hire, assign, direct, layoff, and retain employees in the agency

   .     .     .     .     .

   (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
   (1) *at the election of the agency, on the numbers, types, and grades of employees* or positions assigned to any organizational subdivision, work project, or tour of duty, ...

   (3) appropriate *arrangements for employees adversely affected* by the exercise of any authority under this section by such management officials.
   5 U.S.C. § 7106 (emphasis added).

2. The parties term negotiations over "arrangements for employees adversely affected by" management decisions as "impact bargaining." This shorthand reference is useful but may be somewhat misleading. Virtually any working condition might be termed an "impact" of a nonbargainable managerial decision. The statutory language, however, contemplates a much narrower range of issues under the rubric of "arrangements for employees adversely affected by" staffing decisions.

tual finding with regard to the "new" 2 p.m. to 10 p.m. shift. By contrast, however, it found the "change in hours of the previously existing first shift" did not involve the "numbers, types, or grades of employees" assigned. *Id.* at 118. The Authority imposed a status quo ante remedy for Customs refusal to negotiate the change in the first shift's hours.

The majority ignores the profound legal significance of the ALJ's and the Authority's factual findings in *Region V,* and thereby misreads the outcome. Because the creation of the new afternoon shift involved the "numbers, types, or grades of employees," Customs had no statutory duty to bargain over those hours. 5 U.S.C. § 7106(b)(1). The Authority did not impose a status quo ante remedy for the new shift's hours for the simple reason that Customs' refusal to bargain over that shift's hours did not violate the Act. On the other hand, the Authority did apply a status quo ante remedy for the day shift because the refusal to bargain over the change in that shift's hours did violate the Act.

Contrary to the majority's view, *Region V* does not hold that status quo ante remedies are inappropriate *per se* for refusals to bargain over the hours of new shifts. The decision never states such a blanket proposition. At most, *Region V* implies that a return to the status quo ante may be inappropriate for a refusal to bargain over arrangements for employees adversely affected by an exempt agency staffing decision. *See Region V,* 109 F.L.R.A. at 119–20, quoted by the majority, *supra* at 706.

The majority, therefore, is incorrect in concluding that *Region V* established a two-step analytic structure. The primary issue in *Region V* was whether the change in hours was a bargainable management decision. Where the time change was bargainable, *Region V* applied a status quo ante remedy, consistent with the policies of the Act. *Region V,* 9 F.L.R.A. at 119.

### B. Application of Region V

Initially, I question whether the changes in starting and quitting times in this case fairly can be characterized as "new shifts." Customs divided all employees on the original 8:00 a.m. to 4:00 p.m. shift into four groups. One group continued to start work at 8:00 a.m.; a second group began work at 6:00 a.m.; a third at 6:30 a.m.; and a fourth at 9:00 a.m. Whether this arrangement established three entirely new shifts or merely constituted an alteration of the existing shift's hours for some employees is at least debatable.

Neither in the briefs nor at oral argument could the parties draw a valid distinction between such minor changes in shift hours and the institution of new shifts. The distinction appears to be purely one of semantics where time changes are of the small magnitude involved here. In *Region V,* the Authority characterized Customs' two-hour change in shift starting times, from 8:00 a.m. to 10:00 a.m., as an alteration of existing hours. *Region V,* F.L.R.A. at 118. Here, the Authority characterized virtually identical changes by the same agency as "new shifts," and on the basis of that characterization the majority of this court upholds denial of a retroactive remedy.

The majority concedes that the Authority may not arbitrarily impose different remedies in similar situations, *Cf. Burinskas v. NLRB,* 357 F.2d 822, 827 (D.C.Cir.1966) (NLRB may not treat similar situations in dissimilar ways), but it defers to the Authority's finding that the time changes at issue constituted new shifts. I believe the Authority may not arbitrarily characterize identical situations in dissimilar ways, and on that basis impose different remedies. *See, e.g. Local 777, Democratic Union Organizing Committee v. NLRB,* 603 F.2d 862, 871–72 (D.C.Cir.1978) (granting no deference to an agency decision that, on same facts as previous contrary decision, held certain taxi drivers were "employees"); *Carnation Co. v. NLRB,* 429 F.2d 1130, 1134–35 (9th Cir.1970) (denying enforcement of Board order that, contrary to factually indistinguishable previous Board decision, held certain truck drivers were "em-

ployees"). The Authority's failure to define and treat these factually indistinguishable situations in a similar way was arbitrary and capricious. *See Burinskas,* 357 F.2d at 827.

I emphasize, however, that the central issue is not whether these changes properly are characterized as "new shifts" or "alterations of an existing shift." Standing alone, these terms have no legal significance. The Act makes no distinction in bargaining duties or remedies between new shifts and altered existing shifts. At most, terming a time change as one or the other is useful only as a tool to determine whether bargaining would infringe on managerial prerogatives. The primary focus must remain on whether the new starting and quitting times involve the "numbers, types, and grades of employees assigned," and thereby are tied to decisions reserved by statute to management alone.

In sharp contrast to the part of *Region V* denying status quo ante relief, both the ALJ and the Authority in this case expressly found the new hours did not involve staffing requirements. *Region VIII,* 9 F.L. R.A. at 606–07, 615. Unlike in *Region V,* Customs was not merely required to engage in limited bargaining over arrangements for employees adversely affected by an exempt staffing decision. Instead, before altering the existing hours, Customs was required to bargain specifically over the new shift hours. If no penalty attaches for Customs' refusal to bargain, the Act's bargaining requirements would be rendered meaningless, regardless whether the changed hours constituted new shifts or a modification of an existing shift. This result is contrary to *Region V* and the policies of the Act.

Consequently, I would find the Authority's failure to provide a status quo ante remedy was arbitrary and capricious, and I would remand for an appropriate award.