Donald **CARTER**, Plaintiff-Appellant,

v.

**SMITH FOOD KING, dba Smith Food King Retail Clerks Union 1428, Larry D. Sooter, President Local Union 1428, Gary Doone, Bob Smith aka Robert Smith, David Thornton and Does 1 through 130 Inc., Defendants-Appellees.**

No. 84–5894.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1985.

Decided July 11, 1985.

Ida L. Campbell-Thomas, Pomona, Cal., for plaintiff-appellant.

Ralph J. Scalzo, McLaughlin & Irvin, Robert M. Simpson, Rose, Klein & Marials, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, WALLACE and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Donald Carter filed suit in state court alleging that his former employer, Smith-Food King; his former union, Retail Clerks Union Local 1428 ("union"); and various individuals associated with those organizations had violated many of his rights as an employee.[1] The defendants removed the action to federal court. The district court construed Carter's complaint as alleging numerous causes of action: a federal claim against Smith-Food King for breach of its collective bargaining agreement; a federal claim against the union for breach of its duty of fair representation; state tort claims against both Smith-Food King and the union for breach of the covenant of good faith and fair dealing, wrongful interference with a business relationship, intentional infliction of emotional distress, and constructive discharge; and a state law claim against both Smith-Food King and the union for age and sex discrimination in violation of the California Fair Employment and Housing Act.

The district court assumed jurisdiction over the entire action and granted summary judgment in favor of the defendants on the claims it construed as arising under federal law as well as the claims that arose under California law. The court dismissed the claim for breach of the collective bargaining agreement as time-barred. It dismissed the claim for breach of the duty of fair representation finding that no genuine issue of material fact existed and that the union was entitled to judgment as a matter of law. It dismissed Carter's pendent tort claims, concluding that the allegations were mere recharacterizations of the federal claims and were thus preempted by federal labor law. Finally, the court dismissed Carter's pendent statutory discrimination claim for his failure to exhaust available administrative remedies. Although we affirm the district court's judgments that Carter's pendent tort claims were preempted by federal law and that Carter had failed to exhaust available administrative remedies with respect to his statutory discrimination claim against the union, we reverse its decision to grant summary judgment in favor of Smith-Food King and the union on each of Carter's other claims.

I. *Breach of the Collective Bargaining Agreement*

■ The district court ruled that Carter's claim against his employer for breach

---

1. In addition to Smith-Food King and Retail Clerks Union Local # 1428, Carter named as defendants: Gary Doone, District Manager for Smith-Food King; Bob Smith, Store Manager of the Smith-Food King store in which Carter was employed; Larry Sooter, President of the Retail Clerks Union; and David Thornton, Business Representative for the union. Each of the claims brought against Smith-Food King was also asserted against Doone and Smith; each of the claims alleged against the union was also raised against Sooter and Thornton. Unless we indicate otherwise, our discussion of Carter's claims against Smith-Food King and the union is equally applicable to his claims against the individually named employees of the respective organizations.

of the collective bargaining agreement was barred by the 100-day statute of limitations prescribed by California Code of Civil Procedure section 1288. The court concluded that the applicable statute of limitations was determined by state law, noting that we had not yet decided whether to give retroactive effect to that portion of the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which held that the six-month statute of limitations in section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), applies to section 301 claims against an employer.

Subsequent to the district court's decision and the parties' briefing of this case on appeal, we have made clear that the six-month statute of limitations prescribed by *Del Costello* is to be applied retroactively when the effect of doing so would be to lengthen the period in which petitioners could have timely filed their claims. *Aragon v. Federated Department Stores, Inc.*, 750 F.2d 1447, 1451 (9th Cir.1985). Such is the case here; the six-month federal statute of limitations exceeds the 100-day period that would otherwise be applicable under California law. We therefore conclude, and Smith-Food King now agrees, that the

timeliness of Carter's complaint must be assessed in light of the NLRA's six-month statute of limitations. As Smith-Food King further agrees, Carter's complaint was filed within six months of the date that his cause of action accrued.[2]

Accordingly, we reverse the district court's judgment that Carter's claim against his former employer for breach of its collective bargaining agreement was time-barred.[3] Although we express no view as to the merit of Carter's section 301 claim, we are unable to affirm the district court's dismissal of the claim because, as explained in section II, *infra*, a triable question of fact exists as to whether the union breached its duty of fair representation in failing to pursue Carter's claim that Smith-Food King had unjustly manipulated his schedule.[4]

## II. Breach of the Duty of Fair Representation

■ The district court granted the union's motion for summary judgment on Carter's claim for breach of the duty of fair representation. In order to maintain an action for breach of the duty of fair representation, a claimant must establish that the union has acted toward him in an

---

2. Although the exact accrual date of Carter's cause of action is somewhat uncertain, counsel for Smith-Food King admit that the complaint was filed within six months of such date. The statutory period for a § 301 claim begins to run when the employee knows or has reason to know that the union has quit pursuing his grievance short of arbitration. *McNaughton v. Dillingham Corp.*, 707 F.2d 1042, 1047 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 291, 83 L.Ed. 227 (1984). Smith-Food King's counsel contend that Carter realistically knew that the union had decided to stop pursuing his grievance on or about June 14, 1982, and that, in any event, Carter should have known of the union's decision no later than August 13, 1982. The complaint, filed on December 9, 1982, was brought within six months of both dates.

3. The district court further found that the individually named employees of Smith-Food King were entitled to summary judgment because they were not parties to the collective bargaining agreement and thus could not be sued for a breach thereof. The district court indicated that Carter had agreed that the individual employees could not be held liable for breach of

the collective bargaining agreement. Carter has not challenged this ruling on appeal and we therefore express no view as to its validity.

4. If the union had properly determined that Carter's claim of schedule manipulation was without merit, Carter would not be able to proceed directly against Smith-Food King for breach of the collective bargaining agreement. Where, as here, the collective bargaining agreement vests the union with the exclusive power to invoke grievance and arbitration procedures for breach of contract claims, an employee may not proceed directly against an employer for violation of the collective bargaining agreement without establishing that the union has breached its duty of fair representation in processing the grievance. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 566–67, 96 S.Ct. 1048, 1057–58, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Johnson v. United States Postal Service & National Rural Letter Carriers Ass'n*, 756 F.2d 1461, 1466 (9th Cir.1985).

arbitrary, discriminatory, or bad faith manner. *See, e.g., Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Here, Carter alleges that the union discriminated against him by arbitrarily refusing to pursue his various grievances against Smith-Food King and by treating his claims in a hostile manner. In his affidavit he contends that on more than one occasion the union business agent demonstrated hostility toward his claims and toward him personally and singled him out for unfair and demeaning treatment. The district court concluded that the evidence before it established "beyond any doubt" that the union had acted non-arbitrarily and in good faith in deciding to drop Carter's grievances short of arbitration. We disagree.

■ The uncontroverted evidence before the district court established that the union had determined that at least one of Carter's many grievances against his employer was meritorious. Union representative David Thornton attested to the fact that after investigating Carter's allegation of schedule manipulation, he had concluded that Carter was improperly denied approximately 60 hours of employment to which he was entitled by virtue of his seniority. Thornton further declared that Smith-Food King recognized its scheduling error and was willing to pay Carter for the lost hours provided that Carter sign a release absolving Smith-Food King of all liability for the incident. Smith-Food King also advised Thornton to inform Carter that it intended to report these earnings to the California Unemployment Insurance office.

Thornton's declaration indicates that he communicated Smith-Food King's offer to Carter but that Carter was unwilling to sign the requested release and was "reluctant" to have the earnings reported to the State Unemployment Insurance office. The evidence does not establish any further communication between the union and Carter regarding the schedule manipulation claim nor does it suggest the basis for the union's decision to drop the grievance. There is no indication in the record that the union had determined that the settlement offer was fair and reasonable; that it had advised Carter to accept the settlement offer; or, most important, that the union had informed Carter that it intended to stop pursuing his claim if he refused to agree to the terms of Smith-Food King's offer. Moreover, Thornton's deposition testimony reveals that he failed to investigate whether the requested release was customarily demanded by Smith-Food King of its employees prior to the settlement of grievances such as Carter's.

We do not believe that the district court was justified, based on the limited record before it, in concluding that the evidence established "beyond any doubt" that the union had made a non-arbitrary and good faith decision to drop Carter's scheduling manipulation grievance against his employer. The basis for the union's decision to stop pursuing that claim is simply not apparent from the limited record that was presented to the district court. In view of the inferences that may properly be drawn at the summary judgment stage from the union's failure to offer any explanation for its failure to pursue the seemingly valid scheduling grievance and in view of Carter's statements regarding the hostility of the union's business agent toward him personally and toward his claim, we conclude that Carter's claim against the union for breach of the duty of fair representation should not have been dismissed.[5]

■ Although a triable question of fact exists as to whether the union breached its duty of fair representation, we affirm the district court's decision to grant summary judgment in favor of Union Business Representative David Thornton and Union President Larry Sooter. It is well settled

---

5. The district court properly concluded that Carter's complaint against the union was timely filed. The court applied the three-year statute of limitations prescribed by Cal.Civ.Proc.Code § 388. *See Aragon,* 750 F.2d at 1451. Carter's schedule manipulation claim would have been timely even if assessed under the six-month statute of limitations adopted in *DelCostello. See supra* n. 2.

that section 301 provides the basis for an action for breach of the duty of fair representation only against a union as an entity, and not against individuals who happen to hold positions in that union. *See, e.g., Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247–48, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962); *Williams v. Pacific Maritime Association,* 421 F.2d 1287, 1289 (9th Cir.1970). The individually named defendants were thus entitled to judgment as a matter of law.

### III. *The Pendent Tort Claims*

■ In addition to the hybrid section 301/breach of duty claim, Carter's complaint included four pendent tort claims against both Smith-Food King and the union for: (1) breach of the covenant of good faith and fair dealing; (2) wrongful interference with a business relationship; (3) intentional infliction of emotional distress; and (4) constructive discharge.

We agree with the district court's conclusion that the pendent tort claims are nothing more than recharacterizations of Carter's federal claims. The tort claims each arose out of the same acts and conduct which formed the basis of Carter's section 301/breach of duty claims and are thus preempted by federal labor law. *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977); *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1474–75 (9th Cir.1984); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980) (per curiam).

### IV. *The Statutory Age and Race Discrimination Claims*

Carter's complaint also included pendent state law claims against both Smith-Food King and the union for age and race dis-

crimination in violation of the California Fair Employment and Housing Act (FEHA).[6] Cal.Gov't Code §§ 12900–12996 (West 1980 & Supp.1985). The district court dismissed the statutory discrimination claims on the ground that Carter had failed to exhaust his administrative remedies. Although we uphold the dismissal of the FEHA claim against the union, we believe that the district court erred in dismissing the claim against Smith-Food King.

Carter filed a charge with the Department of Fair Employment and Housing ("DFEH" or "Department") on March 1, 1982 accusing Smith-Food King of unlawful discrimination on the basis of race and age. The company was the only party named in the charge. The Department issued a right-to-sue letter at Carter's request on March 25, 1982.

### A. *The Union*

The California courts have consistently held that exhaustion of the FEHA's administrative remedies including the filing of a written complaint with the agency is a jurisdictional prerequisite to the filing of a civil action. *See, e.g., Allen v. Western Airlines, Inc.,* 110 Cal.App.3d 767, 770, 168 Cal.Rptr. 86, 88 (1980); *Bennett v. Borden, Inc.,* 56 Cal.App.3d 706, 709, 128 Cal.Rptr. 627, 628 (1976); *Hollon v. Pierce,* 257 Cal. App.2d 468, 475, 64 Cal.Rptr. 808, 812 (1967). There is no indication or suggestion of any kind in the charge filed by Carter that the union was in any way responsible for the alleged discrimination, nor would there be any reason for the union, even if it had discriminated against Carter, to believe that the complaint referred to *its* acts of discrimination. Similarly, the DFEH would have no reason, based on the charge, to conduct any investigation with respect to the union's conduct.[7]

---

**6.** Carter's pendent FEHA claims are not preempted by federal labor law. *See Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1374 (9th Cir.) ("California's interest in providing a cause of action for violation of public policy or a statute is the enforcement of the underlying statute or policy, not the regulation of the em-

ployment relationship"), *petition for cert. filed,* — U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1984).

**7.** The DFEH charge referred solely to a "lay-off" plus a general allegation of harassment. No

■ Carter's failure to name the union in the charge he filed before the DFEH is a jurisdictional bar to the maintenance of a civil action. *See Bennett,* 56 Cal.App.3d at 709, 128 Cal.Rptr. 627; *cf. Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666 (9th Cir.1980) (failure to name union in employment discrimination charge filed against employer before EEOC, or to allege facts therein from which it could be inferred that union violated Title VII, precludes claimant from proceeding against union in Title VII action). The district court properly dismissed Carter's state law employment discrimination claim against the union.

### B. *The Employer*

Carter did file a complaint with the DFEH against Smith-Food King and was issued a right-to-sue letter. However, the district court concluded that, because the right-to-sue letter had been issued at Carter's request, he failed to exhaust his administrative remedies. Carter contends that he requested the letter because the DFEH had informed him that it would be unable even to begin investigation of his claim within the 150-day period during which it was statutorily authorized to issue an accusation against Smith-Food King.[8] The district court rejected Carter's claim, finding "no evidence in the record" that the DFEH had issued the right-to-sue letter after determining that it would be unable to investigate Carter's grievance within the statutory 150-day period. The court instructed Carter to return to the DFEH to allow it to either investigate his claim or to issue a right-to-sue letter which indicated expressly that the Department had determined that no accusation would issue within 150 days from the filing of his grievance.

We disagree with the district court's finding that there was "no evidence in the record" that the DFEH determined it would be unable to issue an accusation letter in a timely manner. To the contrary, we find that the uncontroverted evidence before the district court establishes that the Department had long adhered to a practice of issuing a significant number of right-to-sue letters virtually contemporaneously with or very shortly after the filing of complaints precisely because its substantial backlog prevented it from processing many of those complaints in a timely manner.[9] Carter filed an affidavit of Sol Pavlovsky, the District Administrator of the DFEH, attesting that the Department routinely issued right-to-sue letters as soon as it determined that the handling of a case would take more than 150 days. *See Commodore Home Systems, Inc. v. Superior Court,* 32 Cal.3d 211, 218 n. 8, 185 Cal. Rptr. 270, 649 P.2d 912 (1982) (describing Department's policy, without addressings is merits); Gelb & Frankfurt, *California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination,* 34 Hastings L.J. 1055, 1066 & n. 87 (1983) (discussing Department's directive establishing policy of issuing right-to-sue letters on demand).

Pavlovsky declared that, due to the Department's limited resources, determinations that a charge could not be fully pro-

---

reference was made to any failure to prosecute a grievance.

**8.** The Department must notify a claimant of his or her right to sue if it does not issue an accusation against the offending employer within 150 days after the filing of a complaint or as soon as it determines that no such accusation shall issue. The statute provides, in pertinent part, as follows:

If an accusation is not issued within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the department shall promptly notify, in writing, the person claiming to be aggrieved. Such notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization or employment agency named in the verified complaint within one year from the date of such notice. Cal.Gov't Code § 12965(b) (West Supp.1985).

**9.** The district court did not question the propriety of the Department's practice of issuing a significant number of right-to-sue letters after making a preliminary determination that it would be unable to process the grievance within the statutory 150-day period. Nor do we question the Department's authority to do so pursuant to its interpretation of the statute that it is charged with implementing.

cessed in 150 days were not uncommonly made at the time that a charge was initially filed or shortly thereafter. He explained that one of the occasions on which such determinations were made was when a claimant requested a right-to-sue letter shortly after filing his charge. He emphasized that the issuance of a right-to-sue letter "at the request of the claimant," as was the case here, did not in any way preclude the Department from determining independently that it would be unable to process the grievance within 150 days. He further stated that the DFEH followed the practice he described at the time that Carter filed his grievance, in March, 1982, at which time the average delay between the filing and investigation of a charge was six to seven months. In a letter sent to Carter's attorney in November of 1983, Mr. Pavlovsky explained that the Department would not have been able to process Carter's case within the 150-day statutory period. In his letter, Pavlovsky indicated that the Department would not have even *initiated* a formal investigation of Carter's claim until September, 1982, some six months after it had been filed.

Pavlovsky's statements fully support Carter's position. The district court's finding that there was "no evidence" that the DFEH determined that an accusation letter would not issue within 150 days of the date that Carter filed his grievance was clearly in error. We find that the uncontroverted evidence before the district court is more than sufficient to establish the fact that the requisite determination was made by the DFEH.

■ The district court apparently believed that in order to satisfy the exhaustion requirement, a right-to-sue letter must state expressly that the DFEH has determined that it will be unable to issue an accusation against the offending employer within the statutory period. We do not read the statute to impose any such requirement. Although section 12965(b) of the FEHA may require the Department to determine that an accusation will not timely issue before notifying a claimant of his

right to sue, the statute imposes no requirement that the Department set forth this determination in its right-to-sue letter. *See* Cal.Gov't Code § 12965(b) (West Supp. 1985).

■ We also reject any implication that because an individual is issued a right-to-sue letter at his request it somehow follows that he has failed to exhaust his administrative remedies. The Department has construed the FEHA to permit it to issue right-to-sue letters at a claimant's request prior to the expiration of the 150-day period. We accord great deference to the construction of a statute by the agency charged with its administration. *See, e.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *National Treasury Employees Union v. Federal Labor Relations Authority,* 732 F.2d 703, 706 (9th Cir.1984). A right-to-sue letter would be a contradiction in terms if it did not mean that the recipient had exhausted his administrative remedies and had met all the statutory prerequisites to the filing of a lawsuit.

The issuance of a right-to-sue letter, whether or not upon request, signifies that the Department has determined that the claimant has satisfied all of the FEHA's requirements and is entitled to bring a civil action against the offending individual or organization. In fact, the letter issued to Carter advised him that the Department had determined that he had a right to file a lawsuit. We have no reason to believe that in sending the letter the Department, the state agency charged with enforcement of the statute at issue, was unaware of the statute's procedural requirements or deliberately flouted them. Nor have any of the appellees introduced any evidence that would support any such theory. The administrative agency's right-to-sue letter is entitled to a presumption of regularity. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Daly v. Volpe,* 514 F.2d 1106, 1111 (9th Cir.1975). Accordingly, there is no legal basis for setting aside the Department's determina-

tion that Carter complied with all the procedural requirements of California law.

■ Moreover, the district court's dismissal of Carter's FEHA claim against Smith-Food King was wrong for another reason. A good faith recipient of a right-to-sue letter may not be penalized for a procedural error made by the state agency. In addressing a closely related question, we have made clear that a complainant is not precluded from pursuing a federal claim of employment discrimination under Title VII, 42 U.S.C. §§ 2000e—2000e–17 (1982), because of the EEOC's failure to fulfill the procedural requirements imposed upon it by statute. Although complainants are statutorily required to exhaust the EEOC's administrative remedies as a prerequisite to the maintenance of a Title VII action, we have emphasized that a claimant's right to pursue a civil action "is not to be prejudiced" by the EEOC's failure to properly process a grievance after it has been filed. *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 923 n. 2 (9th Cir.1982); *Watson v. Gulf & Western Industries*, 650 F.2d 990, 992–93 (9th Cir.1981). Similarly, when a state agency charged with administering a particular statute determines that an individual has the right to sue under that statute and so informs him, the claimant may justifiably rely on the agency's representation, even if the state agency is in error.

In summary, we reject the district court's conclusion that, notwithstanding the receipt by Carter of the right-to-sue letter, his claim of race and age discrimination was barred as a result of a failure to exhaust available administrative remedies. Carter's statutory discrimination claim against Smith-Food King should not have been dismissed.

## C. *Doone and Smith*

■ The district court did not consider whether Carter's failure to name separately, in the FEHA charge, the individual employees of Smith-Food King who allegedly committed the discriminatory acts precludes him from maintaining a civil action against those individuals. The parties have not addressed or briefed the question on appeal. Because the answer is not readily apparent or beyond dispute, we choose not to exercise our discretion to make the initial determination. *See, e.g., In re Howell*, 731 F.2d 624, 627 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984); *Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir. 1980).[10] We remand to the district court to allow the parties and the court to address the question whether Carter has exhausted his administrative remedies with respect to the individual employees of Smith-Food King named as defendants in this case.

## V. *Conclusion*

Carter's hybrid section 301/breach of duty claim presents a triable issue of fact

---

**10.** Although we have not attempted to determine whether, under California law, a plaintiff's failure to name individuals in an FEHA charge precludes him from proceeding against them in a civil action, we note that the California Supreme Court has held that courts must be particularly careful to construe liberally the terms of charges that are filed before the DFEH. *See Stearns v. Fair Employment Practice Commission*, 6 Cal.3d 205, 214, 98 Cal.Rptr. 467, 472, 490 P.2d 1155, 1160 (1971). This court has approached the issue in a similar manner, concluding that under certain circumstances a plaintiff may maintain a civil action against defendants who were not named in the prior administrative charge. *Gibson v. Local 40*, 543 F.2d 1259, 263 n. 1 (9th Cir.1976) (EEOC charge against local union that failed to name international held sufficient to permit plaintiff to proceed in Title VII action against international where international had received copy of charge

when filed, and had been treated as a fully participating party, and charge apprised EEOC and parties of acts alleged to be discriminatory and parties allegedly responsible for them); *See Kaplan v. Int'l Alliance of Theatrical & Stage Employees & Motion Picture Operators*, 525 F.2d 1354, 1358–59 (9th Cir.1975) (EEOC charge against local chapter of union held sufficient to preserve claimant's ability to pursue Title VII action against international that had not been specifically named in EEOC charge where charge apprised the EEOC, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts); *cf. Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir.1980) (failure to name defendant in EEOC charge precluded subsequent Title VII action against that defendant where administrative charge did not allege facts from which it could be inferred that the defendant had violated Title VII).

and should not have been resolved on summary judgment. We affirm the district court's conclusion that Carter's pendent tort claims are preempted by federal law. Although the district court properly concluded that Carter had failed to exhaust administrative remedies prior to filing his statutory discrimination claim against the union, it erred in reaching the same conclusion with respect to Carter's FEHA claim against Smith-Food King, Doone, and Smith.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.