**FEDERAL EMPLOYEES METAL TRADES COUNCIL, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

Department of the Navy, Intervenor-Respondent.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1533, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

Department of the Navy, Intervenor-Respondent.

Nos. 85–7039, 85–7050.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted.Nov. 14, 1985.

Decided Dec. 20, 1985.

David A. Rosenfeld, San Francisco, Cal., Joe Goldberg, Washington, D.C., for petitioner.

Steven H. Svartz, William R. Tobey, Washington, D.C., for respondent.

Before GOODWIN, NELSON and CANBY, Circuit Judges.

GOODWIN, Circuit Judge:

In these consolidated cases, the Federal Employees Metal Trades Council and the American Federation of Government Employees, Local 1533 (the Unions), who represent civilian employees at two naval installations, appeal the determination of the Federal Labor Relations Authority (FLRA) that distributing paychecks is a method or means of performing work. The FLRA's decision in effect constituted a rule that paycheck distribution is negotiable only at the Navy's option. *See* 5 U.S.C. § 7106(b)(1) (1982). We reverse.

The Unions representing two sets of civilian Navy employees requested collective bargaining over the method of distributing paychecks to the workforce. The Unions sought to obtain for new employees the option of having paychecks passed out at the worksite. The Navy plans to distribute paychecks to newly hired workers only by mail or through direct deposit to banks, and refused to bargain on the proposal. The Navy argued that the method of distributing paychecks falls within "the technology, methods, and means of performing work" exception to the general rule of negotiability, making the method of distribution negotiable only at the election of the agency under 5 U.S.C. § 7106(b)(1) (1982).

The Unions appealed the Navy's refusal to bargain to the FLRA, which has jurisdiction to resolve issues relating to the scope of the duty to bargain in good faith. 5 U.S.C. §§ 7105(a)(2)(E), 7117(c) (1982). The FLRA sustained the Navy's contention, and the Unions appeal.

This court has jurisdiction under 5 U.S.C. § 7123(a) (1982). Section 7123(c) provides that the Agency's findings will be conclusive if supported by substantial evidence on the record considered as a whole, and that review is "on the record in accordance with [5 U.S.C. §] 706." The Agency's interpretation of the Federal Labor Relations Act must be sustained if "reasoned and supportable," *National Treasury Employees Union v. FLRA*, 732 F.2d 703, 705 (9th Cir.1984).

In providing for collective bargaining for employees of the federal government, Congress believed that such bargaining would contribute to the public interest by facilitating and encouraging the amicable settlement of disputes between employees and employers regarding conditions of employment. 5 U.S.C. § 7101(a)(1)(C) (1982). At the same time, Congress feared that compulsory bargaining over certain management decisions would unduly restrain the

ability of officials to run the employing agency efficiently. Consequently, Congress set aside certain exceptions from the general rule of collective bargaining.

The FLRA decided that one of these exceptions, for decisions about "the technology, methods, and means of performing work," fit the current case. Thus, the method of distributing paychecks was declared negotiable only at the election of the agency under 5 U.S.C. § 7106(b)(1) (1982).

The FLRA's premise for this conclusion was that the Navy needed a committed workforce to accomplish its mission of refurbishing ships. Such a workforce is assured only if the workers are paid. Therefore, the FLRA concluded, paying the employees is part of performing work. Because the manner of distributing paychecks is a method or means for paying the employees, the FLRA reasoned, it falls within § 7106(b)(1) and is negotiable only at the request of the agency.

This line of reasoning proves too much. Because any benefit to employees is a means of retaining a stable and committed workforce, the FLRA's reasoning would imply that all wages, hours, and working conditions are within the means and methods exception. To take the exception this far stretches the plain meaning of words to the breaking point. Nothing related to retaining the workforce would be subject to bargaining. Had Congress meant the exception to extend that far, it would not have adopted the Act. As the Supreme Court has recently noted, reviewing courts must not " 'rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.' " *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (ellipsis in original) (quoting *NLRB v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)).

As the FLRA concedes, past decisions have held the design of office space not to be a method or means of performing work. *See, e.g., American Federation of Govern-*ment *Employees, Local 644 v. United States Department of Labor, Mine Health and Safety Administration*, 15 FLRA No. 170 (1984). Yet, under the FLRA's reasoning in this paycheck case, it should have ruled that a place to work is essential to performing work. Because the design of office space is a means of providing a place to work, design is a methods or means of performing work and should be exempt from negotiation. Common sense seems to have prevailed in the office space design case.

The FLRA here distinguishes its earlier decisions establishing the negotiability of office space as involving cases where the agency had failed to establish the required nexus between the matter at issue and furthering the agency mission. However, the distinction depends on the FLRA's changing its approach to determining the matter at issue. In this case, the FLRA has decided that the matter at issue is paying workers. In the design cases, the FLRA decided that the matter at issue was the specific design of the office. Were the FLRA treating the cases analogously, it would have decided that the matter at issue in this case is whether the workers should be paid by handing out checks at the worksite. Under such a definition of the issue, the Navy has failed to establish the required nexus, and the FLRA has offered no reason for its different characterization of the scope of the matter at issue. Arbitrary differences in the treatment of similar cases undercut the agency's claim to deference. *Cf. National Treasury Employees Union*, 732 F.2d at 705 (FLRA cannot arbitrarily impose different remedies in similar situations).

■ A further sign that the FLRA's decision here is inconsistent with the statute is the conclusion of several administrative law judges that methods of distributing paychecks are not a method or means of performing work. *See, e.g., Department of the Navy v. American Federation of Government Employees, Local 1698*, Case No. 2–CA–30236–1 (Dec. 18, 1984). While these decisions have no precedential value,

*see* 5 C.F.R. 2423.29(a) (1984), their inherent pursuasiveness is open to the court to consider. *Cf. Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (although rulings of administrator are not binding, they "constitute a body of experience and informed judgment" the weight of which depends on "all those factors which give it power to persuade").

■ The Navy advanced a number of prudential reasons for mailing checks to workers or to their banks. The most important reason is that of economy. The Navy can save a substantial amount of money by mailing checks instead of by hand delivery at the worksite. On the other hand, the Unions advanced reasons why the workers prefer the paychecks in hand at the worksite; some of the workers move frequently, some do not patronize banks. Also, mail is delayed, sometimes lost, and delay in receiving wages causes inconvenience and in some cases hardship. All of these arguments present the sort of questions collective bargaining is intended to resolve. If Congress believes that the Navy cannot accomplish its mission effectively and efficiently while bargaining over the manner of paying wages, Congress can make another exception. The one exception it has made will not stretch to fit the Navy's objection to bargaining. While we accept the need to give great deference to the agencies charged with administering labor laws, we cannot approve a decision that is inconsistent with a statutory mandate.

Reversed and remanded for further proceedings before the FLRA if the Navy considers that it has other valid reasons for refusing to bargain.